IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIG, Inc., | ) | Case No. 09-12118 (KG) |
| | ) | |
| Debtor. | ) | Hearing date: Expedited Hearing Requested |
| | ) | Objections due: TBD |
| | ) | |

## EMERGENCY MOTION *IN LIMINE* TO BAR THE TESTIMONY OF PETER LAVERAN-STIEBAR, GUY LEWIN SMITH AND MARK HAUF

The Official Committee of Unsecured Creditors (the "Committee") of MIG, Inc. (f/k/a Metromedia International Group, Inc.), debtor in possession in the above-captioned chapter 11 case ("MIG" or the "Debtor"), by and through its undersigned counsel, hereby submits this Motion *in Limine* to Bar the Testimony of Peter Laveran-Stiebar, Guy Lewin-Smith and Mark Hauf, pursuant to Federal Rule of Civil Procedure 37(b) and (c), and Federal Rule of Evidence 401, and in support hereof states as follows:

## I. INTRODUCTION

1. In the most recent manifestation of the Debtor's abject disregard for the rules of discovery, on the day after Thanksgiving, the Debtor revealed for the very first time that intended to call three individuals – Peter Laveran-Stiebar, Guy Lewin-Smith and Mark Hauf – to testify at the impending evidentiary hearing before this Court. That long-sought hearing is scheduled for December 21, 2009, less than three weeks away. According to the Debtor, these three individuals were the principal negotiators of the Poison Pill Provisions. In fact, two of the individuals are attorneys who negotiated the self-dealing transaction.

2. Notably, approximately two and a half months ago, the Debtor never identified two of these three individuals (Peter Laveran-Stiebar, Guy Lewin-Smith) in

response to the Committee's interrogatory that asked for "each and every person who has knowledge about, and/or was involved in, negotiations concerning the transfer of any equity interest in ITCL to Dr. J at any time after February 12, 2005." (*See* Debtor's Resp. to Int. No. 2, attached as <u>Exhibit A</u>). Further, with respect to the third (Mark Hauf), the Debtor disclaimed any control over Mr. Hauf and did not disclose Mr. Hauf as a testifying witness for the Debtor.

3. In the intervening two months, and relying on the Debtor's discovery responses, the Committee – at significant time and cost – deposed eight individuals in New York and London. Now, a mere 24 days before the evidentiary hearing, the Debtor offers for the first time to arrange for these three individuals, who are arguably some of the most important witnesses to the events surrounding the Poison Pill Provisions, to be deposed – without having produced many of the relevant documents, without explaining why these individuals are suddenly relevant or cooperating, and without confirming whether or not the attorney-client privilege is being waived.

4. The Debtor's tactics are not only patently inequitable, but also legally irrelevant. As explained in this Motion and in contemporaneously filed motions, these three witnesses are expected to testify on matters that are not within the proper scope of the evidentiary hearing. Litigation by ambush, particularly so as to impermissibly and significantly expand the number of issues presented at an already-lengthy evidentiary hearing, is precisely what the Rules of Procedure and this Court's carefully planned Scheduling Order were designed to prevent. Accordingly, this Court should bar any testimony of Peter Laveran-Stiebar, Guy Lewin-Smith and Mark Hauf.

## A. The Procedural History of This Case Evidences the Debtor's Failure to Comply with the Rules of Discovery.

5. The Debtor's chapter 11 case has been pending since June 18, 2009. No trustee has been appointed, although the Committee seeks to have a trustee appointed on account of the Debtor's lack of good faith in commencing this chapter 11 case. On July 23, 2009, the Committee filed its Motion for Order, Pursuant to Sections 105(a), 1104(a), 1121(c)(1) and (d)(1) and 1112(b) of title 11 of the United States Code, Appointing a Chapter 11 Trustee and Terminating the Debtor's Exclusivity to File a Plan or, in the Alternative, Dismissing Chapter 11 Case for Cause (the "Committee Motion".) In the Committee Motion, the Committee has sought the termination of the Debtor's exclusivity to file and solicit a chapter 11 plan, and the appointment of a trustee in this case pursuant to section 1104(c) "for cause," consisting, *inter alia*, on account of certain inequitable prepetition conduct, and on account of the lack of good faith in the filing and commencement of this chapter 11 case which was commenced primarily as a litigation tactic in order to pursue an appeal in the Appraisal Action without the need to post a supersedeas bond. The Committee Motion has been delayed in being heard since its filing in July of 2009 and is now scheduled to be heard on December 21 and 22, 2009.

6. More than three months ago, on August 31, 2009, this Court entered a Scheduling Order (the "Scheduling Order") in connection with the Committee Motion. The Scheduling Order entered in connection with the Committee Motion provides that:

> The parties shall commence oral fact discovery on October 5, 2009 and complete oral fact discovery on or before October 23, 2009. The Parties shall give informal notice of the identify of all fact witnesses any Party intends to depose not later than September 23, 2009 but not including experts disclosed pursuant to Paragraph 2 below, and shall serve formal deposition notices for those witnesses identified by September 23, 2009 no later than September 25, 2009. The

> Parties agree to a September 30, 2009 cut-off date for all other deposition notices absent agreement or Court Order.

(Scheduling Order at ¶ 1(e) (A copy of the Scheduling Order is attached as <u>Exhibit B</u>)).

7. The hearing date on the Committee Motion has already been delayed due in large part to discovery disputes between the parties, including the late disclosure of documents by the Debtor which was addressed by this Court at a telephonic hearing held on October 28, 2009, and which resulted in the entry of an Amended Scheduling Order (Docket No. 309, attached as <u>Exhibit C</u>). Notably, the Amended Scheduling Order expressly acknowledges that the Committee was prejudiced by delays in receiving due diligence, directed the Debtor to provide that due diligence, provided specific dates for the taking of the *remaining outstanding fact depositions* related to the Committee Motion and set an expedited time frame for Rothschild Inc. ("Rothschild"), the Committee's financial advisors to receive long-awaited due diligence regarding the Debtor's proposed Five-Year Business Plan, the preparation of their independent valuation report, the depositions of financial experts on valuation issues related to the Committee Motion, and the filing of final briefs in anticipation of the hearing to be held on December 21 and 22, 2009.

**B.  Approximately Two and a Half Months Ago, the Debtor Answers the Committee's Interrogatories, and Discovery Proceeds on that Basis.**

8. On September 23, 2009, Debtor answered the Committee's Interrogatory Requests. In its Interrogatory No. 2, the Committee requested the identify of "each and every person who has knowledge about, and/or was involved in, negotiations concerning the transfer of any equity interest in ITCL to Dr. J at any time after February 12, 2005." (<u>Ex. A</u> at Int. No. 2.)

9. In response, Debtor identified several principals of the Debtor and its Related Entities and Mark Hauf. (*Id.*) Accordingly, the Committee requested the depositions of the principal negotiators and any witnesses the Debtor intended to call at the hearing on the Committee Motion. In this context, the Committee requested that the Debtor produce Mr. Hauf for deposition during the appropriate discovery period and was informed by Debtor's counsel that the Debtor did not have control over Mr. Hauf. (*See* Sept. 28, 2009 Ltr. to K. Finger, attached as Exhibit D.)

10. During that same discovery period, the Debtor did not identify Mr. Hauf as a testifying witness.

### C. Almost One Month Ago, the Committee Files Its Standing Motion, and the Debtor Proposes to Appoint a Special Litigation Committee.

11. On November 3, 2009, the Committee filed its Motion for Order Granting the Committee Standing to: (i) Prosecute Actions on Behalf of the Debtor's Estate; and (ii) Seek a Temporary Restraining Order, Preliminary Injunction and Other Related Relief (Docket No. 310, the "Standing Motion").

12. The Standing Motion was initially heard by this Court on November 18, 2009 and was continued to December 21, 2009 and was continued primarily due to issues arising in connection with the Debtor's sudden appointment of a special litigation committee comprised of two current directors, including Director, Wayne Henderson, whose testimony parties believed was pertinent to the issue of the propriety of a special litigation committee. The Committee contended at the hearing that the Debtor had no authority to appoint a special litigation committee and that Mr. Henderson was disqualified from serving on such a committee even if one were permitted to be appointed on account of claims and causes of action against him for breaches of fiduciary duties as

set forth in the Standing Motion and related Reply in Support of the Standing Motion (Docket No. 343, 345, the "Standing Reply".)

13. Contemporaneous with the filing of this Motion, the Committee has filed an Emergency Motion for an Order, pursuant to sections 105(a), 363(c)(1), 549(a)(2)(B), 1107(a), 1106(a)(3), 1106(a)(4), 1104(c) and (d) and 101(14) of title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 105(a), 363(c)(1), 549(a)(2)(B), 1107(a), 1106(a)(3), 1106(a)(4), 1104(c) and (d) and 101(14): (a) barring the Debtor from appointing a Special Litigation Committee (the "SLC"); (b) declaring the SLC void and impermissible; and (c) disregarding such committee in connection with this Court's consideration of the Committee's Standing Motion (the "SLC Motion".)

14. As noted in the SLC Motion, the appointment of a special litigation committee for the purpose of a debtor investigating its own prepetition conduct is barred under the plain meaning of sections 1107(a), 1106(a)(3), and 1106(a)(4) of the Bankruptcy Code. Accordingly, no evidentiary hearing is necessary to consider the propriety of current directors serving on a special litigation committee that is prohibited under the Bankruptcy Code; nor is an evidentiary hearing necessary to consider whether to grant standing to the Committee to prosecute the claims and causes of actions set forth in the proposed Draft Complaint, as set forth more fully in the Standing Motion and Standing Reply. (Standing Reply at ¶¶ 2-4.)

**D.  Just Five Days Ago, the Debtor Declares for the First Time Its Intention to Call Three Key Witnesses to Testify at the Evidentiary Hearing.**

15. On Friday, November 27, 2009, the day after Thanksgiving, the Debtor informed counsel *for the very first time* that it intends to call Mark Hauf as a witness at the Hearing on December 21, 2009 and that it also wished to present the testimony of

- 6 -

Peter Laveran-Stiebar and Guy Lewin-Smith, the "principal negotiators" of the Purchase & Sale Agreement and New ITCL LLC Agreement. (*See* Nov. 27, 2009 email correspondence with K. Finger, attached as Exhibit E).

16. In that the November 27 email correspondence, counsel for the Debtor *for the first time* offered Mr. Hauf for his deposition and offered Messrs. Laveran-Stieber and Lewin-Smith for their depositions upon written questions. (Ex. E).

17. These three witnesses have long been known to the Debtor. First, Mark Hauf is a former executive of Metromedia, who was involved in the negotiations with Dr. Jokhtaberidze on behalf of Sun Capital and Salford prior to the acceptance of their bid to acquire Metromedia and following the August, 2007 Merger. Upon information and belief, he has been living in London and recently returned to Chicago.

18. Peter Laveran-Stiebar is an attorney at Covington & Burling in London and represented Dr. Jokhtaberidze in his negotiations with the Debtor leading up to the Purchase & Sale Agreement and New ITCL LLC Agreement. Obviously, his whereabouts have also always been known to the Debtor.

19. Guy Lewin-Smith is an attorney at Debevoise & Plimpton in London and represented the Debtor in its negotiations with Dr. Jokhtaberidze leading up to the execution of the Purchase & Sale Agreement and New ITCL LLC Agreement.

20. Counsel for the Committee responded to the Debtor's request regarding these individuals on November 30, 2009, stating that it had serious concerns with the Debtor's apparent eleventh hour decision to call these witnesses at the December 21 hearing. Citing the August 31, 2009 Scheduling Order, the Committee informed the Debtor that it objected to the Debtor calling any of these witnesses at the Hearing. (*See*

Nov. 30, 2009 email from E. Berghoff, attached as Exhibit E.) In its November 30, 2009 email, the Committee also expressed its concerns about the lack of adequate time to obtain meaningful discovery from the above-listed individuals prior to the December 21, 2009 hearing and the privilege issues raised by the lawyers' testimony regarding their negotiation of the agreements at issue. (*Id.*)

21. Counsel for the Debtor responded to the November, 30 email on that same day, and took the position that it was entitled to call Mr. Hauf as a witness on the *Committee Motion* despite its failure to notice Mr. Hauf's deposition pursuant to the Scheduling Order. (*See* Nov. 30, 2009 Resp. from K. Finger, attached as Ex. E). In that same email, the Debtor took the self-serving position that testimony regarding the negotiation of the Purchase & Sale Agreement and New ITCL LLC Agreement were issues that relate to the Committee's Standing Motion. (*Id.*) Notably, the Debtor takes this position despite the fact that all of the cases cited by the Debtor in its objection to the Standing Motion stand for the legal proposition that no evidentiary hearing is appropriate or required in connection with the court's determination of whether "colorable claims" have been asserted for purposes of granting the Standing Motion. (Standing Reply at ¶ 3.)

## II. ARGUMENT

22. The Debtor's last minute attempt to include Messrs. Hauf, Laveran-Stiebar and Guy Lewin Smith as witnesses is nothing more than an untimely effort to sand-bag the Creditors' Committee. To permit the Debtor to ambush the Creditor's Committee with this last minute introduction of fact witnesses on the Committee Motion is not only a violation of the Scheduling Order and applicable discovery rules, it is an inequitable

attempt to force the Committee to choose between foregoing discovery from three key witnesses or agreeing to another extension of the hearing date on the Committee Motion.

23. All three witnesses have long been known to the Debtor, and thus the Debtor cannot credibly argue that any of these individuals became recently known or otherwise excuse the Debtor's continued disregard for discovery. The eleventh-hour introduction of these witnesses prejudices the Committee and highlights the Debtor's attempt to overcome deficiencies in its case by relying on gamesmanship to gain a litigation advantage by the untimely and selective disclosure of evidence. Under these circumstances, this testimony is properly barred. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

24. Moreover, the ruse that two of the witnesses are relevant to the Standing Motion is merely a back-door attempt to bring in evidence relevant to the prepetition misconduct of the Debtor in negotiating the Poison Pill Provisions embedded into its primary asset in contemplation of a chapter 11 filing only months later, as will be demonstrated by the evidence to be presented at the December 21 Hearing on the Committee Motion. The Debtor is tactically seeking to force the Creditors' Committee to have a mini-trial of the causes of action asserted in the Draft Complaint which is the subject of the Standing Motion while simultaneously preventing the Committee from full access to meaningful discovery from the same last minute witnesses. To the extent the testimony of these witnesses is relevant or appropriate, the appropriate time to hear their testimony is in the context of the adversary proceeding contemplated in the Draft Complaint which is sought to be filed in the Standing Motion, after both parties have a

full and equal opportunity to conduct meaningful discovery, including requesting documents and taking the depositions of the witnesses.

25. The Debtor's conduct warrants a discovery sanction for its disregard of the Scheduling Order in this case. The Scheduling Order was designed precisely to prevent this type of ambush by a party. Thus, all three witnesses should be precluded from testifying at the hearing scheduled for December 21, 2009.

### A. Mark Hauf was a Known Witness and Should Have Been Produced During the Proscribed Discovery Period.

26. The Debtor does not deny that it has known about Mark Hauf's whereabouts during the pendency of this proceeding. It only contends that Mark Hauf's testimony is now more convenient because he has moved back to the Chicago area. (Ex. E). This is not a sufficient basis to justify the late disclosure of Mr. Hauf as a deponent, particularly given the fact that the parties traveled to London, where Mr. Hauf was previously residing, to depose the majority of witnesses in this case.

27. The Scheduling Order also bars the Debtor from seeking the deposition of Mark Hauf after the cut-off period for identifying (and deposing) testifying witnesses. (*See* Exhibit B at ¶ 1(e)). This fact is exacerbated by the Debtor's prior representations that it had no control over Mr. Hauf. (Ex. D). The Debtor's new purported "cooperation" with Mr. Hauf is thus directly contradicted by its earlier representations in the meet and confer with Committee's counsel on that issue.

28. It is simply too late to disclose Mr. Hauf as a witness, and the Debtor's cavalier approach to the deposition of Mr. Hauf as reflected in its November 30 correspondence does not overcome its obligations pursuant to the parties' Scheduling Order or applicable discovery rules. Mr. Hauf is a third-party witness and should he have

been designated timely as a witness or a deponent, the Committee would be entitled to first seek documents from Mr. Hauf by subpoena. There is no time to undertake that exercise at this late date; that is precisely the reason for the Court's Scheduling Order.

29. Moreover, the Debtor's failure to produce information related to its Five-Year Business Plan has already caused the Committee to reschedule the hearing date on the Committee Motion from November 5, 2009 to December 21, 2009 and to have to re-depose three witnesses in the weeks prior to the December 21 hearing. Between today's date and the date of the December 21 hearing, the Committee is obligated to submit a pre-trial order, draft a Reply in Support of its Motion to Dismiss and prepare for the Hearing, as well as prepare for and depose three fact witnesses and the Debtor's financial expert. The expectation that the Committee should now prepare and take the deposition of new witnesses known to the Debtor since before it filed this chapter 11 proceeding and during two submissions of Scheduling Orders on the Committee Motion is highly prejudicial.

30. The burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial to warrant the exclusion of evidence. *Ware*, 322 F.3d at 222 (upholding exclusion of evidence of damages due to a series of violations of discovery orders). The Scheduling Order is designed to prevent parties from 'fixing' evidentiary holes in their case at the eleventh hour, and such orders, coupled with the Federal Rules, serve to prevent the type of tactical game-playing Debtor attempts to employ here. *See, e.g., In re U.S. Truck Co. Holdings, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985) ("Discovery serves important purposes, such as avoiding surprise, fully disclosing the nature and scope of the controversy, narrowing, simplifying, and

framing the issues involved, and enabling parties to obtain the factual information needed to prepare for trial. Rules governing discovery should be interpreted broadly to achieve those purposes.") (internal citation omitted); *Hercules Powder Co. v. Rohm & Haas Co.,* 4 F.R.D. 452, 453 (D. Del. 1946) ("[I]n determining a motion under Rule 34 and in framing its order, the court should be guided primarily by the spirit of the Federal Rules which requires that discovery before trial be made wherever possible.") (internal quotation marks omitted).

### B. The Debtor is Similarly Barred from Seeking to Introduce the "Principal Negotiators" of the Challenged Agreements.

31. The Committee contends that the Debtor's lack of good faith in commencing this chapter 11 case includes not only commencing this case as a litigation tactic to continue its appeal of the Appraisal Judgment, but also as an extension of its conduct to delay and frustrate creditor's collection efforts through litigation and through the restructuring of its primary asset to have the *legal effect* of preventing creditors from exercising standard rights and remedies available under state and bankruptcy law. As noted in the Standing Reply, the Poison Pill provisions embedded in the Debtor's primary asset are illegal regardless of the intent in adopting them because of their legal effect as a defensive measure in precluding the transfer of the common stock of the Debtor or the exercise of standard collection remedies without causing "material destruction of value." (Standing Reply at ¶¶ 19, 65-71.)

32. In this context, the Debtor's last minute attempt to call Mr. Laveran-Stiebar and Mr. Lewin-Smith as witnesses in its defense is rife with problems. *First*, the Debtor is only now characterizing these persons as the "principal negotiators" of the Purchase & Sale Agreement and New ITCL LLC Agreement – contrary to prior answers

to discovery. *Second*, the willingness to offer its own attorney and Dr. Jokhtaberidze's attorney as witnesses regarding the negotiation of those agreements implicates issues concerning the waiver of attorney-client privilege - issues the Debtor has not addressed in response to the Committee's question of whether it intended to waive the privilege as to those two witnesses. (Ex. E). *Third*, the Committee is highly prejudiced by its lack of documentary discovery from these third parties, and it is prejudicial to force the Committee to waive the right to seek such evidence in the three weeks prior to the Hearing. *Fourth,* there is no legal basis for the offering of witnesses to rebut the "colorable claims" prong of the Committee's Motion for Standing (Standing Reply at ¶ 3) and therefore the proposed witnesses are really sought for the improper purpose of surprising the Committee with new testimony in defense of the Committee Motion.

33. Despite testimony that Mr. Spencer-Churchill, Mr. Rukhadze, Mr. Nagle and Mr. McIntosh were the principal negotiators of the "deal" with Mr. Jokhtaberidze, counsel for the Debtor now asserts that it was actually the parties' attorneys who were those "principal negotiators." (Ex. E). This "new" evidence is even more curious given the fact that the Debtor has only produced minimal documentation between the attorneys in this case as opposed to the several hundred emails from and between Messrs. Spencer-Churchill, Nagle, McIntosh, Rukhadze and Jokhtaberidze regarding the negotiation of the same agreements. Furthermore, these attorneys were at no point disclosed in response to the Committee's interrogatories on the subject. (Ex. A).

34. The proffered excuse that the Debtor does not have to comply with the Scheduling Order because the lawyers' testimony is only relevant to the Motion for Standing and whether the Committee has asserted colorable claims is without merit.

Central to the Motion to Dismiss is the fact that the Debtor's interested directors agreed to the change of control provisions in the Purchase & Sale Agreement and New ITCL LLC Agreement that prevents creditors from exercising their state and bankruptcy law remedies. (*See* Mot. to Dismiss at ¶¶ 26, 28, 66). The issue of how and why those provisions were negotiated was a focus of Debtor's document production and multiple depositions related to the Motion to Dismiss. At best, Debtor's new assertions raise anew troubling issues as to its previous discovery responses and the testimony of witnesses to date.

35. The "colorable claims" issue in the Motion for Standing relate primarily to the alleged breaches of fiduciary duty by the Directors of MIG in approving the Poison Pill Provisions which have a legal effect that is harmful to the MIG estate and its creditors with no deliberation except for two 50-minute board meetings at which, according to the official board minutes, there was no deliberation on the nature, extent or effect of the Provisions, no market check, no fairness opinion and no independent committee of disinterested directors to oversee the restructuring negotiations. These facts are uncontroverted. (*See* Standing Reply at ¶¶ 6-8, 23-24, 30, 36, 63). Assuming, *arguendo*, that this is a question of fact (the Committee contends that it is not, and refers the Court to the foregoing cites to the Standing Reply), the views of the parties' respective attorneys has no relevance to those issues.

36. As such, it is apparent that the Debtor is attempting to use the Motion for Standing as an excuse to introduce new testimony that is relevant to the Committee Motion. This is prohibited by the Scheduling Order and violates basic discovery rules

and principles of equity. *In re U.S. Truck Co. Holdings, Inc.*, 756 F.2d at 236; *Hercules Powder Co.*, 4 F.R.D. at 453.

37. Moreover, it defies logic that, given the subject matter of the Committee Motion, Debtor has waited until now to disclose that the "principal negotiators" of the agreements at issue were lawyers and offer them for deposition (*upon written questions only*) three weeks before the Hearing. If this fact is indeed true, it is remarkable that neither individual was identified as a person with knowledge of the agreements in Debtor's responses to the Committee's Rule 30(b)(6) notice, or in response to the Committee's Interrogatory Requests. Such trial by ambush tactics are disfavored by the federal courts. *Alvariza v. Home Depot*, 241 F.R.D. 663, 666 (D. Colo. 2007) ("Rule 37(c) is chiefly targeted at protecting a party from being ambushed at trial with previously undisclosed evidence.")

38. Importantly, and central to the prejudice caused by this new disclosure, the Debtor has ignored the Committee's inquiry concerning the privilege implications of identifying the two lawyers who supposedly negotiated the agreements at issue as testifying witnesses. The Committee directly asked Debtor's counsel whether it intends to waive the attorney-client and work product privilege with respect to the negotiations leading up to the Purchase & Sale Agreement and New ITCL LLC Agreement — negotiations it now claims are relevant to the Motion for Standing. The Debtor did not respond. (Ex. E).

39. The Debtor cannot selectively offer the lawyers as witnesses with knowledge about the negotiations leading up the agreements and restrict the testimony to non-privileged matters as such testimony necessarily implicates the lawyer's mental

impressions and advice. That testimony, if offered, amounts to a waiver of the privilege as to those issues. *See U.S. v. Titchell*, 261 F.3d 348, 352 (3d Cir. 2001) ("calling one's attorney as a fact witness in a prior proceeding constitutes a waiver of the attorney-client privilege, at least regarding the subject of the testimony adduced in the prior proceeding."); *Novartis Pharms. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 396, 399 (D. Del. 2002) ("[T]his Court concluded that where a party asserts the advice of counsel as an essential element of its defense, work product immunity, like attorney-client privilege, is also waived with respect to the subject matter of counsel's advice."); *Malec Holdings II, Ltd. v. English*, 2008 U.S. Dist. LEXIS 21844, at *4 (E.D. Wis. Mar.6, 2008).

40. Nor can the Debtor simultaneously offer the lawyers for the transaction at issue to testify as "principal negotiators" of that transaction, but shield itself from the substance of those lawyers' impressions and advice as to those negotiations by purportedly invoking the attorney work product or attorney-client privilege. Therefore, were such witnesses to be allowed, the Creditors' Committee would be entitled to full and complete discovery from them prior to taking their depositions.

> [A] client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter...'This is so because the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.'

*U.S. v. Woodall*, 438 F.2d 1317, 1324 (5th Cir. 1970), *quoting* 8 Wigmore, Evidence (McNaughton Rev. 1961).

41. While the Committee believes the testimony of these witnesses is precluded by the Scheduling Order and the basic precepts behind discovery, the refusal of Debtor to acknowledge, or even address, the waiver issue complicates their "offer" to

depose these individuals (upon written questions). Assuming these lawyers would offer testimony as to the negotiations leading up to the execution of the Purchase and Sale Agreement and Second LLC Agreement, the Committee is entitled to *all* documents (privileged and not privileged) that relate to those negotiations. The Debtor's apparent expectation that the Committee depose these individuals without meaningful discovery is untenable and highly prejudicial.

42. As set forth above, the proposed testimony of the lawyers in their capacity as "principal negotiators" of the Purchase & Sale Agreement and New ITCL LLC Agreement waives the privilege as to the entirety of the subject matter. The Committee would therefore be entitled to serve discovery and seek documents that are otherwise privileged regarding those negotiations prior to a deposition. Those documents must include counsel's advice to its clients as to certain provisions, including the change of control provision. The Debtor cannot use its attorneys as a sword in an attempt to bolster its defenses in this case and also as a shield to prevent the Committee from access to the substance of counsel's negotiations.

43. The Committee obviously has not received those documents, nor served discovery based upon the now-apparent (though unconfirmed) waiver by the Debtor of the attorney-client privilege. Notably, these lawyers are located in London, outside the jurisdiction and subpoena power of this Court. Given that the Hearing is a mere three weeks away, the procedure for obtaining those documents from two individuals who are outside this Court's jurisdiction and, work for two large international law firms, is overly onerous for Debtor to purport to require the Committee to participate in such a procedure so that it may remedy its apparently new found desire to call these witnesses.

44. The offer to produce the lawyers upon written questions is also an improper attempt to limit the Committee's access to the lawyers. As an initial matter, while a party seeking to depose an individual can request that the deposition proceed on written questions, the party presenting the witness (here, the Debtor) cannot properly limit a deposition to written questions. FED. R. CIV. P. 31.

45. Finally, as with Mr. Hauf, it is prejudicial to ask the Committee at this late date to "fit in" depositions of the "principal negotiators" of the PSA and New ITCL LLC Agreement, digest the information provided by those witnesses and prepare for the Hearing on December 21. The Scheduling Order in this case has been in place since August 31, 2009. The parties have previously discussed these issues and the Committee cooperated in good faith in identifying any witnesses to be called at the hearing on the Committee Motion in compliance with the Scheduling Order.

### III. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that this Court bar the Debtor from calling Mark Hauf, Peter Laveran-Stiebar and Guy Lewin-Smith as witnesses during the Hearing scheduled for December 21, 2009, and grant such other and further relief as is just and proper.

December 2, 2009
Wilmington, Delaware

BIFFERATO LLC

_____
Ian Connor Bifferato (#3273)
Thomas F. Driscoll III (#4703)
800 North King Street
Wilmington, DE 19801
Telephone: (302) 225-7600

-and-

Carmen H. Lonstein, Esq.
Shima Roy, Esq.
BAKER & McKENZIE LLP
One Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-8000

*Counsel for the Official Committee
of Unsecured Creditors of MIG, Inc.*