IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MIG, INC.,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 09-12118 (KG)<br><br>Hearing Date: August 19, 2010, at 2:00 p.m. E.T.<br>Objection Deadline: August 6, 2010, at 4:00 p.m. E.T. |

## DEBTOR'S SUBSTANTIVE OBJECTION TO PROOF OF CLAIM NO. 302 (KONRAD BABUNASHVILI) PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007 AND LOCAL RULE 3007-1

The above-captioned debtor and debtor-in-possession ("**MIG**"[1] or the "**Debtor**") hereby files an objection (the "**Objection**") pursuant to section 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and requests the entry of an order disallowing and expunging proof of claim number 302 ("**Claim No. 302**") filed in the Debtor's bankruptcy case by Mr. Konrad Babunashvili (the "**Claimant**"). A copy of Claim No. 302 is attached hereto as **Exhibit A**. In support of the relief requested herein, the Debtor respectfully represents as follows:

### Jurisdiction and Status of the Case

1.  The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

2.  The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1.

---

[1] Prior to January 2009, MIG operated under the name "Metromedia International Group, Inc."

3. On June 18, 2009 (the "**Petition Date**"), MIG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. MIG has continued in possession of its properties and is operating and managing its businesses as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On June 30, 2009, the Office of the United States Trustee for District of Delaware appointed an Official Committee of Unsecured Creditors (the "**Committee**").

6. On November 17, 2009, the Debtor filed with the Court its Proposed Disclosure Statement with Respect to the Chapter 11 Plan of Reorganization for MIG, Inc. [Docket No. 357] and the related Chapter 11 Plan of Reorganization for MIG, Inc. [Docket No. 356].

7. On November 19, 2009, the Court entered an order extending the Debtor's exclusive periods within which it may file a plan and solicit acceptances thereof through and including February 16, 2010 and April 16, 2010, respectively [Docket No. 362]. On March 1, 2010, the Court amended its November 10, 2009 exclusivity order and further extended the Debtor's exclusive periods within which it may file a plan and solicit acceptances thereof through and including May 17, 2010 and July 12, 2010, respectively [Docket No. 617]. Then again, on May 19, 2010, the Court entered an order further extending the Debtor's exclusive periods within which it may file a plan and solicit acceptances thereof through and including August 16, 2010 and October 12, 2010, respectively [Docket No. 759].

8. On February 1, 2010, the Debtor filed its First Amended Disclosure Statement With Respect to the First Amended Chapter 11 Plan of Reorganization for MIG, Inc. [Docket No. 546].

9. On February 18, 2010, this Court entered an order (the "**Bar Date Order**") extending until March 10, 2010 at 4:00 p.m. (ET) (the "**Bar Date**") as the final date and time for filing proofs of claim against the Debtor's estate on account of claims arising, or deemed to have arisen pursuant to section 501(d) of the Bankruptcy Code, prior to the Petition Date (the "**Claims**") and approving the form and manner of notice of the Bar Date Order [Docket No. 590].

## Background[2]

10. Currently, all of the common shares of MIG are owned by CaucusCom Ventures, L.P. ("**CaucusCom**"), which acquired the shares through a back-end merger effective August 21, 2007. CaucusCom is a joint venture created between Salford Capital Partners, Inc. and Sun Capital Partners Ltd., on or about May 10, 2007, to pursue a transaction with MIG.

11. The Debtor and certain of its affiliates hold interests in several leading and innovative telecommunications providers in the Republic of Georgia ("**Georgia**"), a country in the Caucasus region between Russia, Turkey, and Azerbaijan.

12. MIG indirectly owns 100% of the membership interests of Telecom Georgia, which it holds through its 100% ownership of International Telcell LLC ("**ITLLC**"). As a result, ITLLC is entitled to receive dividends from Telecom Georgia, to the extent they are declared and payable. An organizational chart detailing the Debtor's various holdings is attached hereto as **Exhibit B**.

13. Claimant asserts that pursuant to a letter agreement (the **Agreement**") between the Claimant and ITLLC, dated as of April 10, 1997, the Claimant is entitled to a five percent

---

[2] A detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of this chapter 11 case, is more fully set forth in the *Declaration of Peter Nagle in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief*, dated June 19, 2009, and incorporated herein by reference.

(5%) interest in all dividends or distributions that ITLLC receives on account of its 30% interest in Telecom Georgia. A copy of the Agreement is attached to Claim No. 302.[3]

14. Notwithstanding that the Debtor is not obligated to Claimant under the Agreement, on February 18 2010, the Claimant filed Claim No. 302 in the Debtor's bankruptcy case. Claim No. 302 asserts that the Agreement has been breached by the Debtor, and requests payment of $1,400,000.00 as actual and prospective damages based on the Claimant's failure to receive payment under the Agreement.

## Relief Requested

15. By this Objection, the Debtor requests the entry of an order under Bankruptcy Code section 502(b) and Bankruptcy Rules 3003 and 3007, disallowing in full and expunging in its entirety Claim No. 302. Claim No. 302 should be expunged in its entirety because Claimant does not hold a claim against the Debtor and, in any event, the claim fails as a matter of applicable Connecticut contract law in that it fails to demonstrate a breach of contract or to provide any support for the damages alleged to have been caused by a breach.

## Argument

16. As an initial matter, section 501(a) of the Bankruptcy Code provides that a creditor may file a proof of claim against the debtor's bankruptcy estate. 11 U.S.C. § 501(a) ("A creditor or indenture trustee may file a proof of claim"). In the Bankruptcy Code, a creditor is defined as an "entity that has a claim against the debtor that arose before the order of relief concerning the debtor." *See* 11 U.S.C. § 101(10). Here, the Debtor is not a party to the Agreement and has no obligations under the Agreement. Thus, the Claimant is not a creditor because its claim is not against the Debtor, but instead is a claim against ITLLC, a non-debtor

---

[3] The Addendum to Claim No. 302 states that the Agreement is attached thereto as Exhibit A, but the Agreement is actually attached behind Exhibit B to the Addendum. *See* Exhibit A hereto.

subsidiary. Accordingly, the Claimant is not a creditor of the Debtor, Claim No. 302 is not a claim against the Debtor's estate and, as a result, Claim No. 302 should be disallowed in its entirety.

17. Section 502(b) of the Bankruptcy Code governs the claims allowance process, providing in relevant part as follows:

> (b) . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful current of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that -
>
> (1) such claim is **unenforceable against the debtor and property of the debtor**, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured

11 U.S.C. § 502(b)(1) (emphasis added). Claim No. 302 is unenforceable against the Debtor and its estate because the Claimant has no right to payment from MIG, contractually or otherwise. Accordingly, Claim No. 302 should be disallowed in full and expunged.

18. In any event, even if the Debtor was a party to the Agreement, or if the Debtor were somehow obligated under the Agreement, Claim No. 302 fails as a matter of nonbankruptcy law. The Agreement is governed by Connecticut law. *See* Agreement, ¶ 6. Under Connecticut law, a party asserting a breach of contract claim must show: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *See Rosato v. Mascardo*, 844 A.2d 893, 902 (Conn. App. 2004); *see also Bascetta v. O'Neill's Chevrolet & Buick, Inc.*, No. CV020518505S, 2004 WL 1926220, at *2 (Conn. Super. July 8, 2004) (same). Further, the burden of proving a breach of contract under Connecticut law rests on the party asserting the claim. *See Jasmin v. New England Plasma*, No. WWMCV044000706S, 2006 WL 3759285, at *3 (Conn. Super. Nov. 20, 2006) (stating that plaintiff has the burden of proving a breach of contract by a preponderance of the evidence); *see also Bascetta*, 2004 WL

1926220, at *2 (noting plaintiff's failure to sustain his burden of proof concerning a breach of contract claim).

19. Here, the Claimant completely fails to meet its burden of proof to sustain a claim for breach of the Agreement. First, the Claimant has not proven the formation of a contract. MIG is not a party to the Agreement. The only parties to the Agreement are the Claimant and ITLLC.[4]

20. Moreover, Claim No. 302 advances no reason at all why the Debtor should be bound by an Agreement entered into by one of its subsidiaries. Under Connecticut law, parent corporations and their subsidiaries are separate and distinct legal entities, absent piercing the corporate veil or tortious interference with contract on the part of the parent corporation. *See Hess v. L.G. Balfour Co., Inc.*, 822 F. Supp. 84, 87 (D. Conn. 1993) (granting summary judgment to parent corporation on breach of contract claim asserted by former employee of parent's subsidiary because employee failed to pierce the corporate veil and the parent did not dominate or interfere with the subsidiary as required under Connecticut law to impose liability upon parent under general agency principles). Here, there is no basis for disregarding that MIG and ITLLC are separate and distinct corporate entities to determine that MIG should somehow be bound by the Agreement, or that Claim No. 302 in some way relates to "property of the estate."

21. Second, the Claimant has not shown a breach of the Agreement (by either ITLLC or MIG). The Agreement simply grants the Claimant "a five (5%) interest in all dividends or distributions received by [ITLLC] from the Venture[5] . . . in respect of [ITLLC's] thirty (30%)

---

[4] Thus, as even a cursory reading of the Agreement reveals, the statement made in the Addendum to Claim No. 302 that "the Agreement authorized the claimant to receive certain interest payments from the Debtor[ ]" is patently untrue.

[5] In the Agreement, the "Venture" is defined as Georgian Communications (Geocom) Company. This company is now known as Telecom Georgia.

percent ownership interest in the Venture." Agreement, ¶ 6. Thus, Claimant was entitled to payment from ITLLC *only to the extent that* ITLLC received either dividends or distributions from the Venture. If ITLLC received no dividends or distributions, then the Claimant was not entitled to any payment from ITLLC.

22. This fact was stated quite clearly to the Claimant in a letter he received from Natasha Alexeeva, Esq., then MIG's Assistant General Counsel, dated August 18, 2003 (the "Alexeeva Letter"). A copy of the Alexeeva Letter is attached to Claim No. 302 as Exhibit B. Nowhere in Claim No. 302 or any of its attachments does the Claimant contest this correct reading of the Agreement. More significantly, nowhere in Claim No. 302 is it alleged that ITLLC received dividends or distributions from the Venture that would obligate it to pay Claimant his 5% share per the Agreement. The Addendum to Claim No. 302 simply states that "Telecom Georgia did generate income, which was the reason why MIG had increased its ownership participation in Telecom Georgia (formerly, Georgian Communications Company - Geocom) from 30% to 100%, finishing all shares acquisition process in 2005." Even if true, this statement in no way supports the existence of an unfilled obligation to pay Claimant under the Agreement.

23. Third, the Claimant has not produced a single shred of evidence to support the $1.4 million requested in Claim No. 302. The Claimant characterizes the claim as "actual and prospective damages" but nowhere indicates the basis for or calculation of this amount of damages, let along which portion of the claim represents actual damages and which portion represents prospective damages. Under Connecticut law, breach of contract "[d]amages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." *Dow & Condon, Inc. v. Garden Main Street, LLC,*

No. HHDCV085020258S, 2009 WL 2451778, at *5, n. 1 (Conn. Super. July 9, 2009) (stating that contract damages are designed to place the non-breaching party in the same position that they would have been in had the contract been fully performed). Here, the Claimant has apparently fabricated the $1.4 million figure out of thin air. This is insufficient to sustain a claim for damages arising from a breach of contract under Connecticut law.

24. In sum, the Debtor, MIG, is not a party to the Agreement, and ITLLC is not a debtor in the instant bankruptcy case. There is no basis for imputing to MIG any liability for breaching the Agreement if the Agreement has even been breached (which appears doubtful). Whatever ITLLC's obligations to the Claimant are under the Agreement are not properly considered in the context of this chapter 11 case. Even if the Debtor, and not ITLLC, was a party to the Agreement, the Claimant cannot make out a claim for breach of contract under the applicable law governing the Agreement. Accordingly, Claim No. 302 should be disallowed in its entirety and expunged.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court enter an order disallowing and expunging Claim No. 302 in its entirety and granting the Debtor such other and further relief as is just and proper.

Dated: July 20, 2010

GREENBERG TRAURIG, LLP

_____
Scott D. Cousins (DE Bar No. 3079)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
selzers@gtlaw.com

-and-

Nancy A. Mitchell
Maria J. DiConza
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
diconzam@gtlaw.com

Counsel for the Debtor
and Debtor-in-Possession