**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MIG, INC.,<br><br>               Debtor. | Chapter 11<br><br>Case No. 09-12118 (KG) |

**APPLICATION OF MIG, LLC, AS REORGANIZED
DEBTOR FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS SPECIAL COUNSEL
EFFECTIVE AS OF DECEMBER 1, 2010 PURSUANT TO
SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE**

MIG, LLC, as reorganized debtor (the "**Reorganized Debtor**") and successor to the above-captioned debtor, MIG, Inc. ("**MIG**" or the "**Debtor**"), hereby submits this application (the "**Application**") for entry of an order (a) authorizing the retention and employment of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden, Arps**" or the "**Firm**") as special counsel to the Debtor, effective as of December 1, 2010, pursuant to sections 327(e) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2014(a), 2016(b), and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and (b) providing any additional relief required in order to effectuate the foregoing. The facts and circumstances supporting this Application are as set forth herein and in the declaration of Mark S. Chehi (the "**Chehi Declaration**"), attached hereto as **Exhibit "A"**, and the statement of Mark S. Chehi (the "**2016 Statement**"), attached hereto as **Exhibit "B"**, each of which is incorporated herein by reference. In support of this Application, the Reorganized Debtor respectfully states as follows:

**Status of the Case and Jurisdiction**

1. On June 18, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtor operated its business and managed its affairs as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

2. On June 30, 2009, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors.

3. On August 15, 2010, the Debtor and the Committee filed the Joint Second Amended Plan of Reorganization for MIG, Inc. (the "**Second Amended Plan**") and the Second Amended Disclosure Statement With Respect to the Joint Second Amended Chapter 11 Plan of Reorganization for MIG, Inc. (the "**Second Amended Disclosure Statement**") [Docket Nos. 913 and 914].

4. On August 19, 2010, the Court entered an Order (I) Approving the Second Amended Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Joint Second Amended Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving Form and Manner of Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Voting Deadline and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan and (B) Proposed Cure Amounts Related to the Assumed Contracts; and (IV) Granting Related Relief [Docket No. 955].

5.	On November 12, 2010, the Debtor and the Committee filed the Modified Joint Second Amended Plan of Reorganization for MIG, Inc. (the "**Modified Second Amended Plan**") [Docket No. 1157].

6.	On November 19, 2010, the Court entered its Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Second Amended Plan of Reorganization for MIG. Inc. [Docket No. 1209] (the "**Confirmation Order**").

7.	On December 31, 2010, the Modified Second Amended Plan became effective (the "**Effective Date**").

8.	The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

9.	The statutory predicates for the relief sought herein are sections 327(e) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a), 2016, and 5002.

## **Background**[1]

10.	Prior to the Effective Date, MIG's principal asset was its indirect ownership of 46% of the membership interests of International Telcell Cellular, LLC ("**ITCL**"), which it held through its 100% ownership of ITC Cellular LLC. ITCL owns all the issued and outstanding equity interests of Magticom Ltd. ("**Magticom**"), the leading mobile telephony company in Georgia.

---

[1] A more detailed factual background of the Debtor's business and operations, as well as the events precipitating the commencement of the Debtor's chapter 11 case, is more fully set forth in the *Declaration of Peter Nagle in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief* (the "**First Day Declaration**"), dated June 19, 2009 and incorporated herein by reference.

11. MIG also indirectly owned 100% of the membership interests of a Georgian fixed line telecommunications operator, Telecom Georgia, which it held through its 100% ownership of International Telcell LLC ("**IT LLC**").

12. As disclosed in the Second Amended Disclosure Statement, Telecom Georgia has been the subject of an investigation by the Republic of Georgia's ("Georgia") financial police with respect to certain assets sold by Telecom Georgia to Magticom. Specifically, the Georgian financial police have assessed tax-related charges against Telecom Georgia on the grounds that: (i) Magticom and Telecom Georgia are related parties and, as such, the sale of such assets was below market price; and (ii) Telecom Georgia wrongly wrote off accounts receivable from its books. Telecom Georgia strongly disputed such charges and filed a case in the Georgian court seeking appropriate relief on the grounds that Telecom Georgia and Magticom are not related parties according to the Georgian tax code and, even if they were related, the transaction price was fair; and, in accordance with the Georgian tax code, Telecom Georgia had the right to write off its accounts receivable from its books.

13. MIG and its subsidiaries have denied and defended against these charges, including through expert analysis and reports submitted by Ernst & Young, which confirmed that Telecom Georgia had received more than fair value for the assets purchased by Magticom.

14. On November 6, 2010, Andria Abashidze ("**Mr. Abashidze**"), the former General Director of Telecom Georgia, and Giorgi Gigineishvili ("**Mr. Gigineishvili**"), who had acted under power of attorney for ITCL, were arrested and jailed on charges of conspiracy to commit fraud with respect to the transfer of assets and alleged underpayment of taxes. Bail was denied by the Georgian authorities.

15. MIG, Telecom Georgia, the Georgian government, and other relevant parties have engaged in substantive discussions in an effort to settle all of the outstanding issues. As part of these discussions, the parties discussed the possibility of MIG making a lump sum payment to the Georgian government in order to settle any purported tax liabilities. In addition, the parties discussed the possibility of MIG making payments for bail so that Messrs. Gigineishvili and Abashidze would be released from prison. The discussions also involved TG assigning certain claims to one of its creditors in satisfaction of its claims.

16. On December 21, 2010, MIG filed the Debtor's Emergency Motion For Order Authorizing Certain Payments to the Government of the Republic of Georgia Pursuant to Sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules of Procedure (the "**Payment Motion**") [Docket No. 1273].

17. On December 22, 2010, the Court entered its order approving the Payment Motion [Docket No. 1279].

18. The settlement discussions came to fruition and resulted in an agreement (the "**Settlement Agreement**") between MIG, Telecom Georgia, the Georgian government, and other relevant parties. Pursuant to the Settlement Agreement, all of the charges were resolved in return for payment of certain amounts to the Georgian government and a plea agreement with Messrs. Abashidze and Gigineishvili whereby neither individual admitted any fault or wrongdoing and both agreed to serve one year of probation. As a result of the Settlement Agreement, Messrs. Abashidze and Gigineishvili were released from incarceration on January 4, 2011.

**Relief Requested**

19. By this Application, the Reorganized Debtor respectfully requests that this Court enter an order authorizing it to employ and retain Skadden, Arps as special counsel as of December 1, 2010, in connection with the prosecution and imprisonment of Messrs. Abashidze and Gigineishvili in Georgia and claims against MIG.

**Basis for Relief**

20. Section 327(e) of the Bankruptcy Code permits the employment of an attorney for a special purpose when the attorney has previously represented the debtor, if such employment is in the best interests of the debtor's estate. Specifically, section 327(e) provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the [debtor] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

21. Moreover, Rule 2014(a) of the Bankruptcy Rules requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. Bankr. R. 2014(a)

22. Skadden, Arps was selected as special counsel because of Skadden, Arps' extensive experience in connection with representation of foreign individuals and entities that

require advice and assistance with various government agencies and Skadden, Arps' track record of providing effective and efficient legal services. Skadden, Arps was the best qualified law firm to provide the specialized legal services sought by MIG and, after the Effective Date, the Reorganized Debtor. Moreover, based on informed belief from the Chehi Declaration and the 2016 Statement, the Reorganized Debtor believes that Skadden, Arps does not represent or hold any interest adverse to MIG, its estate, or the Reorganized Debtor on the matters for which Skadden, Arps has been retained. Accordingly, the Reorganized Debtor submits that the immediate retention of Skadden, Arps is in the best interest of the MIG, its estate, its creditors, all other parties in interest, and the Reorganized Debtor.

## Scope of Employment

23. The professional services that Skadden, Arps rendered included, but are not be limited to, the following:

> a. providing legal advice to MIG and the Reorganized Debtor in connection with the prosecution and imprisonment of Abashidze and Gigineishvili and related matters;
>
> b. negotiating, drafting, and pursuing documentation necessary as determined in conjunction with the above; and
>
> c. providing information or advice to the directors, officers or employees in their corporate capacities in conjunction with the above.

## Skadden, Arps' Disclosure Concerning Conflicts of Interest

24. Skadden, Arps has informed the Reorganized Debtor that, as set forth in more detail in the Chehi Declaration and subject to any exceptions contained therein or in the schedules thereto, Skadden, Arps does not hold or represent any interest adverse to the MIG, its estate, or the Reorganized Debtor with respect to the legal work for which Skadden, Arps was retained. All information with respect to Skadden, Arps' connections with MIG, its creditors, any party in interest, their respective attorneys and accountants, the Reorganized Debtor, the

United States Trustee, or any person employed in the office of the United States Trustee is set forth in the Chehi Declaration.

25. Skadden, Arps will conduct continued reviews of its files to ensure that it continues to neither hold nor represent any interest adverse to the Reorganized Debtor, MIG or to its estate with respect to its legal work in connection with which Skadden, Arps is to be employed. To the extent any information disclosed herein or in the Chehi Declaration requires amendment or modification upon Skadden, Arps completion of further review or as additional information becomes available, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

26. The Reorganized Debtor believes that it is necessary and in the best interest of MIG, its estate and creditors, and the Reorganized Debtor to employ and retain Skadden, Arps as its special counsel to render professional services on its behalf in regard to the Georgia incarcerations and related claims.

## Professional Compensation

27. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a). Skadden, Arps intends to apply for compensation for professional services rendered in connection with this chapter 11 case subject to the approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Skadden, Arps. The 2016 Statement (Exhibit B) is submitted pursuant to Rule 2016 of the Bankruptcy Rules and Section 329 of Bankruptcy Code and incorporated herein by reference. Skadden, Arps advised the Reorganized Debtor that

the hourly rates applicable to the principal attorneys and paralegals proposed to represent MIG during the period from December 1, 2010, through December 31, 2010 are:

| Greg Craig | $1050[2] |
|---|---|
| Ivan Schlager | $990 |
| Amy Sabrin | $990 |
| Cliff Sloan | $990 |

28. Other attorneys and paralegals will render services as needed. During the period from December 1, 2010, through December 31, 2010, Skadden, Arps' hourly rates for this matter range from $990 to $1050 per hour for partners and $335 to $680 per hour for associates. The Reorganized Debtor understands that the hourly rates set forth above are subject to periodic adjustments in the ordinary course of business.

29. The hourly rates set forth above are Skadden, Arps' standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate Skadden, Arps for its work and to cover fixed and routine overhead expenses. It is Skadden, Arps' policy to charge its clients in all areas of practice for expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals," and telecopier charges. Skadden, Arps will charge the Reorganized Debtor for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to this Court's approval of such expenses pursuant to the Bankruptcy Code, such Bankruptcy Rules as may from time to time be applicable, such District of Delaware Local Bankruptcy Rules as may from time to time be applicable, and such procedures as may be fixed by order of this Court. Skadden,

---

[2] As a client accommodation, Skadden, Arps voluntarily agrees to reduce Mr. Craig's hourly rate to $1000 for his services rendered to the Debtor during the period from December 1, 2010, and December 31, 2010.

Arps believes that failure to charge these expenses would require the firm to increase its current hourly rates.

30. In addition, Skadden, Arps intends to seek compensation for all time and expenses associated with its retention in accordance with sections 330 and 331 of the Bankruptcy Code and any orders of this Court, including the preparation of this Application, the Chehi Declaration, the 2016 Statement, and related documents, as well as any monthly fee statements and a final fee application.

31. Other than as set forth herein, there is no proposed arrangement to compensate Skadden, Arps. Skadden, Arps has not shared, nor agreed to share, (a) any compensation it has received or may receive with any other party or person, other than with the shareholders, counsel, and associates of Skadden, Arps, or (b) any compensation another person or party has received or may receive.

## Payments to Skadden, Arps

32. Skadden, Arps requested an advance evergreen retainer in the amount of $100,000.00 (the "**Retainer**"). Such Retainer, however, was never paid.

33. Skadden, Arps intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, and pursuant to any additional procedures that may be established by the Court in this case.

## Request for Approval of Retention of Skadden, Arps, Effective as of December 1, 2010

34. The Reorganized Debtor requests that Skadden, Arps' retention be made effective as of December 1, 2010, in order to allow Skadden, Arps to be compensated for the work it performed for MIG between December 1, 2010, and December 31, 2010, but prior to the Court's

consideration of this Application. With the incarceration and denial of bail for both Abashidze and Gigineishvili, Skadden, Arps immediately had to turn its attention to urgent matters including, but not limited to, the imprisonment of Abashidze and Gigineishvili and related prosecution in Georgia. The Debtor submits that under the circumstances, retroactive approval to December 1, 2010 is warranted.[3]

## Waiver of Local Rule 2016-2(d)(iv)

35. Local Rule 2016-2 requires, among other things, that a professional person retained by a debtor's estate maintain time records in six (6) minute increments. Del. Bankr. L.R. 2016-2(d)(iv). Skadden, Arps has advised the Reorganized Debtor that the firm customarily records time in non-bankruptcy representations similar to Skadden, Arps' representation of the Debtor and the Reorganized Debtor in one hour increments. Thus, the Reorganized Debtor respectfully submits a waiver of the requirement in Local Rule 2016-2(d)(iv) is appropriate under the circumstances.

## Notice

36. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; and (b) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Reorganized Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

37. No previous application for the relief sought herein has been made to this or any other court.

---

[3] Local Rule 2014-1(b) provides, in relevant part: "If [a] retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court order otherwise."

WHEREFORE, the Reorganized Debtor respectfully requests that this Court enter an order granting the relief requested herein and that it grant the Reorganized Debtor such other and further relief as is just and proper.

Dated: February 2, 2011                    GREENBERG TRAURIG, LLP

*/s/ Sandra G. M. Selzer*
Scott D. Cousins (DE Bar No. 3079)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware  19801
Telephone:  (302) 661-7000
Facsimile:  (302) 661-7360
Email: cousinss@gtlaw.com
             selzers@gtlaw.com

-and-

Nancy A. Mitchell
Maria J. DiConza
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
Email: mitchelln@gtlaw.com
diconzam@gtlaw.com

Counsel for MIG, LLC, as the Reorganized Debtor